Good morning, Your Honors, and may it please the Court. My name is Corey DeClark. I'm Assistant Federal Public Defender, and I'm joined by Laura Vennard, who's the principal drafter of the many briefs that the Court received. We represent Petitioner Mr. Valverde-Rumbo. I'd like to reserve three minutes, and I'll pay attention to the time. So I thought it would be helpful to start by just clarifying that there are these two separate appeals in this case that have different but related sources. So the first appeal comes from a 2015 district court case. In that case, Mr. Valverde-Rumbo, he moved to dismiss the indictment against him on the grounds that he would have qualified for a U visa, but there was a due process violation, and the Court in that case found that there was a due process violation. However, he did not satisfy the prejudice prong, and then in the interim between then and now, the case was properly appealed, it was timely appealed, and in the interim, Pereira came down. And when Pereira came down, we looked back at that case, determined that, in fact, he had received a notice to appear that lacked time and date. And so under Pereira, which found that a notice to appear that lacks time and date is simply not a notice to appear at all, the Court simply lacked jurisdiction in 2006 when it deported him to deport him in that way. And so our primary appeal from that 2015 decision is this Pereira issue. Between, and I'll come back to that. It worked. We, as a panel, probably aren't going to decide this Pereira issue because other cases are ahead of your case in line. So I don't know if it makes sense for you to spend your time on that. Maybe my colleagues have questions. We clearly have a panel that has jurisdiction. We're going to wait and see what they have to say. We may ask you for some assistance after that panel comes down, but there's nothing we can do about that case. We're on hold. We're going to have to be on, we're like 15th in line or more on Pereira, so I think that wouldn't be the best use of your time. It's like landing at SFO. Okay, well, any answers that I can provide, I'd be happy to, but I'm also happy to turn to the Rule 33 issue. So turning to Rule 33, between 2015 and 2018 and 2017, our office took over this case. It was previously handled by a private attorney, and we found there was new evidence that we think had been presented in 2015 would have led to a different result. So we compiled that new evidence and filed a motion for a new trial, and in that finding, the 2017 district court found that there were certain elements of the U visa criteria that still could not be met, even with that new evidence, but we think there were clear errors in abuse of discretion in determining what pieces of evidence came in, and then with the remaining evidence, whether or not we would have probably gotten a different result, which, just to be clear, in this case would mean, because they layer, it is probably the case that there plausibly would have been relief, and that plausibly Mr. Valverde-Rumba would have qualified for a U visa, and under REA-VACA, that standard is very low. It's just the sum evidence standard. So the part of this that I have the most trouble with is the waiver, and whether there's enough evidence that there's any even plausible idea that he would have gotten a waiver, and maybe you can help me with this, but it seems that the later declaration doesn't talk about rape and doesn't talk about 2006, and I'm trying to figure out how that later declaration, even if it's new and even if it comes in, is enough to give him enough evidence to overcome the earlier declaration from the government that he wasn't going to get a waiver. Sorry, just so I understand, Your Honor, a later declaration being the declaration from Sarah Koppen, the immigration expert that we had retained just for the purposes of the new tribulation. Correct. Because it seems like Koppen kind of generally says some crimes but doesn't talk about rape and also doesn't give really, all the cases she refers to are much later than 2006. A couple of questions packed in there. So if I can take the last point about 2006 first, there is this issue that was very thorny at the district court level that I think we don't have to address, and this is the question about whether we're talking about Uvisa relief or whether we're talking about relief in the form of interim relief. But putting all that aside, I mean, he needs to get a waiver of inadmissibility, right, because of the crime. That's the part. I just don't know how you get over that part. It seems like all the rest goes away if he can't get a waiver because it all becomes harmless. I mean, correct me if I'm wrong, but if he can't get a waiver, that's just the end of the story, I think. That's absolutely right, Your Honor. However, we think that so Ms. Coffin's professional opinion after handling dozens and dozens of these cases and getting waivers in many of them is that Mr. Valverde-Rumbo could have gotten a waiver. And so that was her opinion. And I take the Court's point. I think that the Court is concerned that she wasn't properly weighing the aggravated felony in question in this case. Is that right? Or wasn't specific enough about, I mean, she gives that opinion, but the information she uses to support that opinion seems to not directly support it as to the time period or the crime. Well, so with respect to the time period, again, if we're talking about the difference between interim relief 2006 or later. I'm not really. I'm just saying, like, as a matter of prediction about whether the agency ever would have given a waiver in the 2006, 2007, 2008 period, it seems like you look at the practice in 2006, 2007, 2008. I don't care about the label of what exactly what it was labeled, but just was anyone getting relief then? And it seems like Coffin comes in and says, in 2014, I had a client who got a waiver, but I'm not sure if that's helping us. I understand. So we cite a journal article that says that during this time, aggravated felonies were, in fact, getting this sort of relief. However, the Court's correct that we have nothing directly on point saying that somebody with this precise conviction at this precise time had gotten a waiver. What we do have is Ms. Coffin testifying that either her clients or clients that she knows about from colleagues of hers that have aggravated felonies of a variety of different kinds were getting waivers at a later time, and the standards haven't changed. So Ms. Coffin's opinion that those aggravated felons that were, again, some of whom were violent aggravated felonies, they were receiving waivers, and Mr. Valverde-Rumbo had a variety of characteristics that were unique to him that made his case particularly compelling when weighed against this. So she testified in her declaration said that not only were aggravated felons receiving waivers, but that was being weighed against a variety of different considerations that were mitigating that she thinks, in her professional opinion, again, would have been enough to get him relief. So he would have gotten a waiver according to her opinion. However, the district court in 2017 did not let her opinion in because it did not believe that her opinion was new, which is a point I'd like to address, if I may. Well, you have to believe or not believe. That's what a trial judge does. Excuse me, Your Honor? Someone asked her to believe whether she's telling the truth and whether it's meritorious. Understood. I think perhaps I'm misunderstanding the point, but the question wasn't about whether the district court in 2017 believed Ms. Coffin. As a matter of fact, the district court commented in its opinion that it found her declaration to be very compelling, very well done. I can't remember the exact language. However, it found that it couldn't consider it because it wasn't new. And the reason it wasn't new is because, according to the court, the ultimate opinion that Ms. Coffin arrived at and the factual bases that she relied on were all available in 2015. And if there's anything that I can leave the court with today, the most important part of our appeal here is that that was just a clear factual error. It was simply not true that Ms. Coffin could have opined that Mr. Valverde-Rumbo plausibly would have received a U visa in 2006 because she didn't have — she was not able to find that Mr. Valverde-Rumbo could have met certain critical elements. So the most obvious of those elements are the helpfulness criterion and the criterion that law enforcement provide a certification. Can I take you back to the waiver, though? Because everything that Coffin says about the waiver would have been available earlier, right? Actually, incorrect, Your Honor. So — and this is, again, this is maybe the second most critical point. So the waiver turns on a variety of factors that are weighed, and one of those factors is itself helpfulness. This is — this is agreed upon by Coffin, by the government's non-expert, Ms. Potter, and in Cisneros-Rodriguez, they talk about this. So helpfulness itself is one of the criteria that goes to waiver, and that's something that I — perhaps we didn't do a good enough job of bringing to the Court's attention, but the Court — So for the — I'm a little unclear on whether the waiver is part of the U visa or a separate part, but anyway, the U visa, definitely you can use a parent's helpfulness. But is it totally clear you can use a parent's helpfulness when you're balancing the individual's equities? Because it's — then it's the individual for the waiver. Yes. So first point, the waiver is a separate issue. That's an issue in this case only because once you've weighed the U visa criteria, the waiver is a separate issue. They don't really apply — That's what I thought. But so looking at the waiver — Yes. So I know under U visa, the helpfulness can be the parent, but is it totally clear it can be for the waiver? Oh, is it — so it is clear that helpfulness is a factor. Is it — I have no authority on point that says that the parent's helpfulness, if the victim in this case is a minor, is what qualifies, but I have no — I also have no authority on point saying that it's not. So I just don't know of any case that particularly addresses that issue. However, if it were satisfactory for the purposes of the U visa, it seems like the same logic would apply for the purposes of the waiver. For a 13-year-old, it would make sense that it was the family that was — that was providing the help, because the waiver is — the waiver is ultimately weighing these mitigating issues that promote certain ideas of public utility, and that's what the — that's what the U visa is all about. So — Sorry. Go ahead. I was going to ask about our court's decision in United States v. Vasquez-Gonzalez that talks about another form of discretionary relief and needing to show the plausibility by pointing to cases like it that got relief. And I'm wondering if it translates over to this kind of discretionary relief, and I'm still kind of stuck on whether he can possibly win without examples of rape being forgiven. Well, if that — if that is the standard, then — then I — I guess we cannot win, but we just don't think that's the standard. And these — they're so factually specific, these cases, maybe the best way to answer this is to go back to a problem that we — that we found with — with how this case was handled initially with Ms. Potter's testimony. So Mickalyn Potter, again, was the USCIS agent that was called to testify in this case, and she specifically addressed — one claim that she made was she said, look, we just didn't see — I never heard of a case where somebody had this precise conviction getting a waiver. But what she also didn't say was that she had seen any cases came — that came through with this particular conviction. So it seems like it would be unfair for everything to turn on whether this particular, very specific factual scenario had — had come through their office before. So you sort of have to — or we feel that we have to argue by analogy. And again, our expert in this case, Ms. Coffin, who we think should have come in, she's testified that a whole swath of different sorts of aggravated felonies, including violent felonies and sexual abuse against minors, had all received a waiver. So point completely taken that we — I do not have an example, unfortunately, I wish I did, of a case where somebody with precisely these convictions had received a waiver. But I also have no example, and I don't believe the government has an example of a case where someone with these precise convictions was denied a waiver, either. I see that I have no — This — if I understand the case correctly, this came up during the denial of a motion for new trial, correct? This issue did. That's correct, Your Honor. So the determination the — that the Court made at that time was based upon the presentation that was made. And then we have to make a determination as to whether or not we're going to accept that. But we have standards of review that we take. What is the standard of review on a motion for new trial? It's abuse of discretion. Okay. So it isn't right or wrong. It's abuse of discretion, right? Now, that's a very high standard to make, considering the involvement here, which this Court was aware of, that attempted rape is a very important issue, socially. Otherwise, et cetera. And there's a lot of evidence that you're talking about. But all he had before him was what was produced by the movement for the new trial. Was everything that you've talked about today in that motion for new trial? Everything that I've discussed today was in the motion for — And the cases you cited. Okay. And I'm sorry? And any cases you've cited, they were all there. I believe that's correct. That's correct, Your Honor. That was yes. That was yes to the boss. You got the nod. Okay. So now we don't say whether he's right or wrong. We say whether he abused his discretion. Much higher standard. How do you meet that standard here? So all we're asking for, Your Honor, we think the abuse of discretion came in the part of — if you unpack that abuse of discretion standard, it includes that some of the factual findings, how the facts were applied to the law, was illogical. And the illogical factual finding or factual application in this case was the one that caused the 2017 district court to not consider Ms. Coffin's testimony. So we haven't even gotten to the point that Your Honors have gotten to of asking what would happen if Ms. Coffin's testimony were considered. We simply want the district court to consider that testimony because it seems to us that — well, first, we believe that that was enough to meet the very low plausibility standard. On a motion for a new trial, you're not getting new evidence in. On a motion for a new trial, you're saying the evidence before the court should have been decided a different way. Oh, I'm sorry, Your Honor. I was not clear about that. So ours is a motion for a new trial based on Rule 33 for new evidence. So in 2015 — I'm sorry about that. That was my fault. In 2015, the case was presented a particular way. However, Mr. Valverde-Rumbo was — and I see that I'm low on time. Okay. Mr. Valverde-Rumbo did not have evidence in the form of police records or court records showing that the crime that he was describing being a victim of actually took place. And so one of the problems there that the 2015 court found was that he simply wasn't able to show that this crime had taken place or that his parents, because he was a minor, were helpful. So then in 2017, we had actually found that evidence. Our investigator went out, and it turned out that the private attorney that was had the spelling of the perpetrator's name wrong. And so through no fault of her own, simply couldn't find that evidence. And so our investigator, frankly — who's a very, very good investigator, but also admits that she got sort of lucky. One of the clerks in the court was particularly helpful, started spelling the name differently, and landed on the correct case. And so now we had the court records, and we had the police reports. And with those two things, we hired an immigration expert that now had everything she needed to opine about whether Mr. Valverde-Rumbo could have qualified for a U-visa back in 2006. So we did ask the court. We said, this is a Rule 33 motion. With this new evidence, if you put it together with the old evidence, he would have qualified for relief, and so we'd like you to take that into account. And the 2017 court said, the critical part of your presentation, Ms. Coffin's testimony, we can't consider that because it's not new. And to get back to Your Honor's original question, the reason this is so central to the abuse of discretion standard is that the reason for which she refused to consider that testimony was that she said that that opinion and the factual bases were available in 2015. And that is just clearly, undeniably inaccurate, because the helpfulness prong could not have been met. And so Ms. Coffin, our expert, simply could not have opined that he would have qualified for a U-visa because she didn't have that evidence. Okay. Thank you, counsel. I'll still give you two minutes for rebuttal, so you can plan on that. Thank you. Good morning. May it please the court. My name is Philip Kofcinski, and I represent the United States. So if I may, I'll jump right into this question about the Rule 33 motion. I should say at the outset that, as I'm sure the court is aware, our position is that the district court actually didn't even have to get to the merits of this. We think... You let your voice drop, and I didn't hear it. I apologize. We think Rule 33 was actually not even the right procedural vehicle to do this motion. We think the district court saw an absence of authority on that one way or another, and so sort of an abundance of caution went ahead and reached the merits. We think the court didn't have to. We think this court could make clear in its opinion that Rule 33 was not proper. We think there's precedent for that in something as simple as the Hinkson factors. When you bring a motion for a new trial on new evidence, one requirement is that the new evidence is material to the issues at trial, and the due process challenge to a removal order has nothing to do with trial. That's abundantly clear from a whole line of cases. Alvarado's Delgado, which is from the 1990s, it's an en banc decision that says the lawfulness of a removal order is not an element of the crime. So at any rate... But it was clearly an issue at one point, whether his due process rights were violated. So the implication of your argument would be that that due process right would just die at some point. There'd be no way to challenge something based on new evidence, right? That may be right. I'm not sure. Conceivably, there are situations under our 2255 where maybe something can be redone with new evidence, but our position is what the Supreme Court said in Mendoza-Lopez all those years ago is that due process requires an opportunity to challenge a prior removal order. The defendant got that opportunity, and due process requires nothing more. Some measure of finality doesn't offend due process. That's our position on Rule 33. Well, in case we don't agree, let's go on to the merits. Yes, if I may, I'll turn to the merits. I think Your Honor's picked up on the standard of review, which we think is critical here, and I should add that abuse of discretion in a way doesn't even capture it, I think, because what the court has said is that it will leave in place a district court's judgment on a Rule 33 unless it is illogical, implausible, or without support in the record. So I would call that something like abuse of discretion plus. But if there's a legal error, then it's an abuse of discretion, right? I suppose it depends on the nature of the error for it to rise to that level of illogical, implausible, or without support in the record. But aren't you reciting the standard for reviewing basically a more factual determination? I'm, well, I'm citing what the court has specifically said about a motion for a trial based on new evidence. Right. Which I suppose. That was like a, Hinkson was looking at the new facts and seeing whether the facts would have come out differently. But if there's a legal error in what's the standard that would have applied, I think we have lots of law that says a legal error is an abuse of discretion. Yes, Your Honor, but I think in this context what the court has said is that the only legal judgment is to identify the correct standard. Here, the court did that. The district court did that by identifying the Hinkson factors as the correct standard. What the court has said is that then. Well, I think there's this sort of substandard going on, though, about what the criteria are for a waiver and whether the district court correctly understood that, because at least your opponent's argument is one of the criteria for a waiver is helpfulness, and it looks like the district court misunderstood that because the district court thought there was no new evidence when, in fact, there was new evidence on that question. So maybe I'll just meet that head-on. We don't think the district court had any misunderstanding. What the district court said was that this expert's opinion or one substantially similar could have been prepared earlier, and we think that's perfectly accurate. But if helpfulness, so a lot of it could have been, and maybe that's enough, but let's just go to this helpfulness thing, because maybe you have a response that's more specific. So on helpfulness, the district court also found that they were diligent in trying to find this evidence of helpfulness and that it wasn't their fault that they hadn't found it because of the spelling error. So the district court says, I mean, it seems elsewhere to acknowledge that that really is properly new and they were diligent. So the helpfulness, if it's a factor in a waiver, then it seems like there is at least a small error. But maybe you have a response that either helpfulness of a parent doesn't count for a waiver or something else about this helpfulness or something. Do you have any other response about what matters for helpfulness? So here is where I think, and Your Honor asked a question about this earlier, here is where we do need to separate getting a U visa from getting a waiver of admissibility. Everybody who applies for a U visa has to meet the former, and it's the criteria, including helpfulness. Aliens with violent, aggravated felonies, like this alien, have to meet the waiver. And in particular, they have to show it is in the national interest and extraordinary circumstances. And there, I think we agree that in theory, helpfulness could be one tiny piece of that big analysis, because it is pretty open-ended, as I understand it, the waiver question. And the alien can pretty much make any case they want to make for why they deserve a waiver. And having their parent be cooperative is one of the factors? Well, I don't even know that there are factors formally defined on that, apart from the overall standard, extraordinary circumstances, public or national interest. And I think, actually, the government's expert, or just witness, she wasn't qualified as an expert, but her witness, she said that, sure, in theory, that could go into the analysis, although she hastened to add that the helpfulness of a parent would be given far less weight than the alien, him or herself, being helpful. So I think the fact that it just ends up being one tiny piece of the waiver analysis justified the district court in finding that an opinion, at least substantially similar to this one, could have been created back when this motion was originally litigated. And even if that's not true, even if the district court is wrong, it simply doesn't matter, because considering this opinion from Ms. Coppin wouldn't have made a difference. And that is where Vasquez-Gonzalez, we do think, is directly on point. It's not essential, but the fact is, that's even actually the same expert. That's out of my district, the Northern District of California. It's the very same immigration expert in that case, in this case. In both cases, she wrote an opinion saying, in my professional judgment, it's very likely a waiver would have been attained. And in the prior case, Vasquez-Gonzalez, what this court found is that that's just not persuasive. Because the alien didn't have specific examples that mirrored his own criminal history. And that's exactly true here. She, I think, sort of very carefully obscures some of that in that declaration, talking about aliens with aggravated felonies who obtained waivers. And the fact is, a lot of crimes are aggravated felonies. And I think we'd all agree that they have varying levels of seriousness. Forcibly raping a minor has to be at the high end of seriousness of any aggravated felony. And that's exactly why the government witness, who's seen thousands and thousands of applications, who testified that she meets with all the other supervisors at the center that processes every UVISA application, and they talk about ensuring consistency in adjudication. She testified that she had never in all of her experience heard of an alien given a waiver with a forcible rape conviction, let alone forcible rape of a minor. And I should also add on this point, in case there's any confusion, this isn't some sort of categorical analysis. The defense, I think, has repeatedly tried to point out the precise crime the defendant pled guilty to, irrelevant. The facts are what matter in this analysis. And the fact is that this defendant forcibly raped a minor and just finished his prison sentence on that crime when he would have been applying for a UVISA in 2006. And the government's evidence, we think, made it very clear that it's just not plausible. He would have received a waiver in those circumstances. If I may, just to briefly touch on Pereira, Your Honor, you made a comment about perhaps needing input from the parties, depending on how this goes in other cases. I would say, without knowing everything else on the Court's docket, there may be unique circumstances here that require special consideration. The way that this has been presented to the Court, whether it's in the Supreme Court without it having been first in the district court, there are potentially ways in which our record is a little underdeveloped. Of course, it's also somewhat less common in this case where the alien stipulated to removal instead of actually having a hearing with an immigration judge. So each of these cases is a little bit different, and I just wanted to make that clear, that we do think perhaps there are unique factors to our case that might not be resolved. For example, if the Sixth Circuit's reasoning was adopted by this Court in another case, that might not be the full story for this defendant. Roberts. In all probability, if that case comes down and is relevant, we will ask, we ordinarily will ask for briefs on both sides. Sure. So we'll hear from you. Okay. Very good. Well, if there are no other questions, we ask the Court to affirm. Thank you. Okay. Thank you, counsel. We'll give you two minutes for rebuttal. Thank you, Your Honor. I'll keep it very short. I was able to find something directly on point. So Ms. Potter herself did say, and I think the government mentioned this, that helpfulness of family members does count for the waiver qualification. So if you are a minor, then your family members are helpful, then that would count in favor. The next thing I'd like to address is just the idea of which facts are weighed. And the government's claim is this just is overwhelmingly obvious, that Mr. Valverde Rumbaugh would not have received this waiver. However, what Ms. Coppin makes so clear is, yes, he was convicted of an aggravated felony, and, yes, it was a violent felony. We would resist, and this is dangerous territory that I'm not going to tread deeply into, forcible rape is the term that the government has adopted. Forcible rape was not the conviction itself. There's a different statute for that. This was assault with intent to commit rape and statutory rape. I'm in no way defending any of this, of course. However, both the court in 2015 and the immigration court both found that there were significant mitigating factors in this case, and so we just want to highlight that. But against this aggravated felony is weighed a whole swath of factors that I just don't want the court to lose sight of. Mr. Valverde Rumbaugh was three when he came into this country. He went to all his schooling in San Jose, and this is particularly important. His father, when he testified in this case against the perpetrator, the gang members that ran into their house and began shooting and, in fact, shot his brother-in-law, they lived next door. And so he did that at great risk to his family, and this is exactly what the UVISA program is supposed to protect. Was that presented before the court on the motion for new trial? Yes and no, Your Honor. It was presented in 2015 in the form of testimony. However, the court records and the police records that went into depth about the extent of the crime itself, so for instance, the police records included information about multiple gunmen, multiple guns. That's interesting, but ordinarily we look at what the lawyer presents to the judge at the motion for new trial. There'll be a motion, it'll be written, and there'll be an argument. Was it in that packet? Yes, Your Honor, it was. And where was it? Was it orally presented to the judge, or was it just in the written material that was given with the motion for new trial? It was in both, Your Honor. Pardon? It was in both. It was included in the papers, and it was argued at trial. Okay. Anyway, the point I'd just like to leave the court with is when you weigh these factors, there are a tremendous number of factors that show extraordinary circumstances for Mr. Valverde-Rambo on one side, and we grant it is being weighed against this aggravated felony. However, as Ms. Coppin testified, she knows of many cases where there are aggravated felons who received waivers, and some of those were violent, and some of those included sexual offenses against children. So again, I take the court's point that we do not have a case exactly on point showing this particular aggravated felony, but by analogy, we think that he would have qualified, and Ms. Coppin agreed. Thank you. Thank you, counsel. Thank you, both sides, for the very helpful arguments. The case is submitted. Would you like to take a break? Would you like to take a break? Let's get another hour. I'm fine. Why don't we take a five-minute break before the next case? Sure.
judges: Wallace, Friedland, Lasnik